**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOROTHY WHIPPLE,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL[1],<br>Acting Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:16-cv-01254 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF DOROTHY WHIPPLE AND AGAINST DEFENDANT NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY |

Dorothy Whipple asserts she is entitled to supplemental security income and disability insurance benefits under Titles II and XVI of the Social Security Act. Plaintiff argues the ALJ erred in evaluating the record, and that the matter should be remanded for further proceedings due to new evidence submitted to the Appeals Council. Because the ALJ erred in rejecting limitations identified by an examining physician, and the additional evidence is significant and probative, the matter is **REMANDED** for further proceedings.

## **BACKGROUND**

On July 26, 2010, Plaintiff filed applications for benefits, in which she alleged disability beginning December 1, 2009. (*See* Doc. 12-4 at 10) The Social Security Administration denied her application at the initial level and upon reconsideration. (*See id.* at 2-6, 10) Plaintiff requested a

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Nancy A. Berryhill for her predecessor, Carolyn W. Colvin, as the defendant in this action.

1

hearing and testified before an ALJ on March 21, 2012. (*Id.* at 10; Doc. 12-3 at 75-76) The ALJ determined Plaintiff was capable of performing her past relevant work as a cashier and issued an order denying benefits on August 29, 2012. (Doc. 12-4 at 10-17)

Plaintiff filed a request for review of the decision with the Appeals Council, which granted the request on December 6, 2013. (Doc. 12-4 at 23-35) The Appeals Council determined the ALJ failed to "adequately assess whether [the] past work meets the regulatory definition for past work under 20 CFR 404.1565 and 416.9565." (*Id.* at 24) The Appeals Council remanded the matter to an ALJ to evaluate Plaintiff's past work and, if necessary, obtain evidence from a vocational expert. (*Id.* at 24-25) Further, the Appeals Council directed the ALJ to "offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." (*Id.* at 25)

Plaintiff testified before an ALJ on May 29, 2014, without counsel or the assistance of a non-attorney representative. (Doc. 12-3 at 24) The ALJ determined Plaintiff was not disabled, "as defined by the Social Security Act, from December 1, 2009 through the date of [the] decision" issued on February 3, 2015. (*Id.* at 42) With the assistance of counsel, Plaintiff requested a review of the decision by the Appeals Council. She requested that the Appeals Council "leave the record open for additional records, as …[she] was unrepresented at the hearing" and believed that "[t]he ALJ did not fully develop the record." (Doc. 12-9 at 2) The Appeals Council granted Plaintiff's request for additional time, after which she submitted more than 550 pages of additional medical records to the Appeals Council. (*See* Doc. 12-3 at 6, 9-10)

On June 21, 2016, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Doc. 12-3 at 2-6) The Appeals Council informed Plaintiff:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.
>
> We considered whether the Administrative Law Judge's action, findings or conclusion is contrary to the weight of evidence of record. We found that this information does not provide a basis for changing the Administrative Law Judge's decision.
>
> We also looked at the additional evidence you submitted from Doctors Medical Center of Modesto (19 pages) dated March 3, 2015 through March 5, 2015 and Modesto Radiology (2 pages) dated March 30, 2015 through August 26, 2015. The Administrative Law Judge decided your case through February 3, 2015. This information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before February 3, 2015.

(*Id.* at 3) The Appeals Council incorporated the additional evidence— which included treatment notes, imagining studies, and functional capacity assessment by Plaintiff's treating physician—into the record. (*Id.* at 7; *see also* Docs. 12-18 through 12-25)

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

### A. Relevant Medical Evidence and Opinions before the ALJ

Dr. Gauhar Khan performed a cardiac consultation on April 8, 2009, after Plaintiff went to an emergency room complaining of "a heaviness and aching-like sensation on the left side of the chest radiating to the left arm and left neck." (Doc. 12-10 at 47) According to Dr. Khan, Plaintiff had "a history of hypertension, dyslipidemia, COPD, asthma, and… coronary artery disease including an occluded right coronary artery, status post angioplasty and stenting." (*Id.*) Dr. Khan was "concerned for [a] falsely negative stress test" given Plaintiff's history, and "recommended coronary angiography and possible revascularizaiton." (*Id.* at 51)

On April 14, 2010, Plaintiff tripped and fractured her left foot. (Doc. 12-12 at 27) Plaintiff's foot "was placed in a soft boot splint and she was given a cane." (*Id.* at 29) On April 19, she was "given a Cam walker," and Dr. Barbara Caena "advised [Plaintiff] to remain nonweightbearing." (*Id.* at 30) At an orthopedic consultation several days later, Plaintiff "complain[ed] of marked, severe pain and swelling." (*Id.* at 27) Dr. Stephen Berrien recommended "an open reduction" as the broken bones were "displaced, volarly angulated." (*Id.*) Plaintiff's contracted an infection following the surgery, but an x-ray in June 2010 showed healing. (*Id.* at 8)

On January 20, 2011, Dr. Mary Lanette Rees reviewed the record and completed a physical residual functional capacity assessment. (Doc. 12-12 at 2-8) Dr. Rees noted Plaintiff's hypertension was controlled, dyspipidemia was medically managed, and hypothyroidisim was well-controlled. (*Id.* at

3-4) Although Plaintiff reported "use of a walker and cane," which was prescribed in April 2010," Dr. Rees concluded the medical record indicated Plaintiff was "ambulatory" and there was "no mention of medically necessary assistive device after healing of left foot fractures." (*Id.* at 7) Dr. Rees concluded Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk about six hours in an eight-hour day, and sit for about six hours in an eight-hour day. (*Id.* at 3) In addition, Dr. Rees believed Plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. (*Id.* at 5) She did not find any manipulative, communicative, or environmental limitations. (*Id.* at 5-6)

Due to Plaintiff's reports of left foot pain and low back pain, she had x-rays taken in June 2011. (Doc. 12-14 at 46-47) Dr. John Martin opined Plaintiff had a "prominent hallux valgus deformity." (*Id.* at 46) Dr. Martin also found "[m]arked erosive changes involving the heads of the third and fourth metatarsals." (*Id.*) He opined, "Although these changes may be related to previous trauma, erosive arthritis as seen in rheumatoid arthritis or gouty arthritis is certainly possibl[e] and not excluded." (*Id.*) Dr. Martin also found "multilevel degenerative disc disease" in Plaintiff's spine, "with disc space narrowing and marginal spurring" at the L3-4, L4-5, and L5-S1 levels. (*Id.* at 47)

Dr. Keith Wahl reviewed the medical record on June 30, 2011, and noted Plaintiff reported an orthopedic impairment. (Doc. 12-13 at 37) Dr. Wahl believed that "[t]he magnitude of the alleged physical limitations [was] not significantly increased by the objective physical findings or laboratory data." (*Id.*) Dr. Wahl concluded Plaintiff could perform light work, but was limited to performing postural activities on a frequent basis. (*Id.*)

In July 2011, Dr. Gretchen WebbKummer observed that Plaintiff walked with an abnormal gait and used a cane. (Doc. 12-14 at 27) She also determined Plaintiff had decreased sensation in the left foot and noted that Plaintiff fell frequently over the course of the year. (*Id.*) Dr. WebbKummer prescribed a walker and indicated an evaluation was necessary regarding Plaintiff's falls. (*Id.*)

Dr. Miguel Hernandez performed a consultative internal medicine evaluation on April 24, 2012. (Doc. 12-16 at 9-14) Dr. Hernandez noted the only records for him to review included "a medical source vendor questionnaire," but he took a medical history from Plaintiff. (*Id.* at 9) Plaintiff reported she broke her left foot after "falling out from her bed when she became startled," and said she had

memory problems "for a few years." (*Id.* at 9-10)  Plaintiff said she could do "some home chores for half an hour" each day, before she had "to rest for a little while." (*Id.* at 10)  Dr. Hernandez observed that Plaintiff walked "in slowly and cautiously with what appear[ed] to be a normal gait, but … using a walker. (*Id.* at 11)  Upon examination, Dr. Hernandez found Plaintiff had a limited range of motion in her back and a "slightly diminished range of motion" with her left foot. (*Id.* at 13-14)  However, he questioned Plaintiff's sincerity after watching her leave and walk down the hallway, because it appeared Plaintiff had "a little bit better range on that left foot in regards to dorsiflexion and plantar flexion." (*Id.* at 13)  Dr. Hernandez opined:

> Based upon today's objective physical findings, the number of hours the claimant could be expected to physically stand and walk in an eight-hour day is up to four hours with routine breaks due to the arthritis that she has in her left foot[.]
>
> The number of hours the claimant could be expected to physically sit in an eight-hour day is up to six hours with routine breaks.
>
> Assistive device: Presently a walker is being used and that may benefit her, especially on long distances and uneven terrain.
>
> Maximum lifting and carrying capacity is 50 pounds occasionally and 25 pounds frequently.

(*Id.* at 13-14)  In addition, Dr. Hernandez believed Plaintiff was limited to occasional "bending, crouching, and crawling because of the osteoarthritis in her left foot and limited range of motion of her low back." (*Id.* at 14)

Dr. Hernandez also completed a "Medical Source Statement of Ability to do Work-Related Activities" on April 24, 2012.  (Doc. 12-16 at 3-8)  In the check-box form, Dr. Hernandez indicated Plaintiff could lift and carry up to ten pounds continuously, 11 to 20 pounds frequently, and 21 to 50 pounds occasionally. (*Id.* at 3)  He also indicated Plaintiff could sit for three hours at one time and five hours total in an eight-hour day, stand for one hour at a time and one hour total in an eight-hour day, and walk for two hours at one time and two hours total in an eight-hour day. (*Id.*)  Dr. Hernandez noted a walker was required for Plaintiff to ambulate, and estimated she could walk "10-20" feet without use of an assistive device. (*Id.*)  He also believed Plaintiff had environmental limitations, and should only be exposed to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity, wetness, dust, odors, fumes, extreme temperatures, and vibrations on an occasional basis. (*Id.* at 7)

**B.     Administrative Hearing Testimony**

On May 29, 2014. Plaintiff appeared at the hearing without assistance of counsel and elected to proceed without a lawyer. (Doc. 12-3 at 51-53) The ALJ informed Plaintiff that she did not "really have medical records for [Plaintiff] for the last couple of years" and informed Plaintiff that she "really need[ed] to bring in the records." (*Id.* at 60-61) Plaintiff responded that she thought the ALJ "got records from [her] doctor," and the ALJ responded the records had not "been updated in two years." (*Id.* at 61) The ALJ indicated she would "get something signed" from Plaintiff to ask her physician for the records, and informed Plaintiff that it was her "responsibility to do that… because it's [her] burden of proof." (*Id.*) The ALJ determined that she would continue with the hearing but would give Plaintiff and her daughter until July 10, 2014, to provide additional medical records from her doctors and hospital visits. (*Id.* at 63)

**C.     The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date of December 1, 2009. (Doc. 12-3 at 27) Second, the ALJ found Plaintiff had "the following severe impairments: hyperlipidemia, obesity, affective disorder, osteoarthritis with history of left foot fractures, essential hypertension, and coronary artery disease." (*Id.*) At step three, the ALJ found Plaintiff's reported physical and mental impairments did not meet or medically equal a Listing. (*Id.* at 30-31) Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform light work as define in 20 CFR 404.1567(b) and 416.967(b), except: she can never climb ropes, scaffolds, or stairs; she can climb ramps occasionally; she can balance, stoop, and crouch occasionally; she can never kneel and crawl; work is limited to simple as defined in the DOT as SVP levels 1 and 2, routine and repetitive; she needs to work in a low stress job, defined as having only occasional decision making and only occasional changes in the work settings; she can have only occasional interactions with the public and with coworkers.

(*Id.* at 32)

Considering Plaintiff's residual functional capacity, age, education, and work experience, the ALJ determined there were "jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 41) Therefore, the ALJ concluded Plaintiff was not disabled from her alleged onset date of December 2, 2009 through the date of the decision, February 3, 2015. (*Id.* at 42)

**D.      Evidence Presented to the Appeals Council**

In connection with Plaintiff's request for review of the ALJ's decision by the Appeals Council, she submitted 552 pages of records that were added to the record, as well as several pages of medical records that were not incorporated into the record because the information concerned a time not addressed by the ALJ. (*See* Doc. 12-2 at 4; Doc. 12-3 at 3)

A questionnaire completed by Dr. Gretchen WebbKummer, Plaintiff's treating physician, was included in the evidence submitted to the Appeals Council. (Doc. 12-3 at 6; Doc. 12-25 at 55) According to Dr. WebbKummer, Plaintiff's medical impairments—including osteoarthritis in the left foot, chronic foot pain, chronic chest wall pain, and coronary artery disease— precluded her from performing ay full time work at any exertion level. (Doc. 12-25 at 55) Dr. WebbKummer noted Plaintiff exhibited "severe chest wall tenderness" and walked with an "antalgic gait / unstable gait." (*Id.*) She opined Plaintiff could sit for 20 minutes at one time and 120 minutes total in an eight-hour day; and Plaintiff could stand and/or walk for 5 minutes at one time and 30 minutes total in an eight-hour day. (*Id.*) Dr. WebbKummer noted Plaintiff "must sit down [and] rest" and "must lie down also to elevate [her] painful [left] foot." (*Id.*) The final question on the form asked Dr. WebbKummer: "Since what date do you believe [Plaintiff] has been disabled to the degree set forth above?" Dr. WebbKummer responded: "4/2010." (*Id.*)

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ in evaluating the medical opinion from Dr. Miguel Hernandez. (Doc. 24 at 6-11) In addition, Plaintiff asserts the matter "should be remanded for further proceedings [based] on the receipt of new evidence not considered by the ALJ," including the questionnaire completed by Dr. WebbKummer. (*Id.* at 24, emphasis omitted)

**A.      The ALJ's Evaluation of the Medical Record**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes*

*v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

A physician's opinion is not binding upon the ALJ, and may be discounted whether or not another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830. When there is conflicting evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the Court when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). Plaintiff contends the ALJ improperly rejected limitations identified by Dr. Hernandez, an examining physician. (Doc. 24 at 9-10) Because the limitations were contradicted by Dr. Wahl, the ALJ was required to identify specific and legitimate reasons for rejecting the limitations.

The ALJ indicated she gave "little weight to Dr. Hernandez's opinions," particularly Plaintiff's ability to "stand and walk up to four hours with routine breaks" in an eight-hour day, the postural limitations, environmental limitations, and Plaintiff's need for a walker. (Doc. 12-3 at 39) The ALJ opined:

> An inability to stand/walk more than three hours in an eight-hour workday is inconsistent with the ability to lift and carry 50 pounds occasionally and 25 pounds frequently. An ability to stoop, kneel, balance, crouch, and crawl frequently is inconsistent with an ability to stand/walk no more than three hours in an eight-hour workday. An ability to climb ramps and stairs is not consistent with the inability to stand/walk more than three hours in an eight-hour workday. There is little objective evidence from Dr. Hernandez's examination that is consistent with the environmental limitations he found. As noted previously, Dr. Hernandez was apparently unaware that the walker had been prescribed for reasons other than the claimant's left foot fractures.

(Doc. 12-3 at 39) Plaintiff contends these were not legally sufficient reasons for rejecting the opinions of Dr. Hernandez. (Doc. 24 at 9-11)

9

The Ninth Circuit explained the opinion of a physician may be rejected where an ALJ finds incongruity between a doctor's assessment and his own medical records and the ALJ explains why the opinion "did not mesh with [his] objective data or history." *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008). Similarly, inconsistency with the overall record constitutes a specific and legitimate reason for discounting a physician's opinion. *Morgan v. Comm'r*, 169 F.3d 595, 602-03 (9th Cir. 1999). However, to reject an opinion as inconsistent with the treatment notes or medical record, the "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).

The ALJ concluded the standing and walking limitations identified by Dr. Hernandez were contradicted by the findings that Plaintiff could lift and carry up to 50 pounds occasionally Likewise, the ALJ concluded the objective findings did not support environmental limitations, but did not explain the decision to completely reject the environmental limitations. As the Ninth Circuit explained, "The Ninth Circuit explained: "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Embrey*, 849 F.2d at 421-22.

Moreover, the ALJ failed to identify a specific and legitimate reason for rejecting the opinion that Plaintiff needed a walker, and would benefit from it "especially on long distances and uneven terrain." (*See* Doc. 12-16 at 3, 13) Indeed, Dr. Hernandez indicated Plaintiff could walk only "10-20" feet without use of an assistive device. (*Id.* at 3) The ALJ merely notes that Dr. Hernandez did not know the walker was prescribed "for reasons other than the claimant's left foot fractures." (Doc. 12-3 at 39) Indeed, the record indicates Dr. WebbKummer prescribed the walker after finding Plaintiff had decreased sensation in her left foot and noting that Plaintiff fell frequently over the course of the year. (*See* Doc. 12-14 at 27) However, the ALJ fails to identify any evidence in the record in conflict with Dr. Hernandez's conclusion that Plaintiff required assistance of a walker and fails to identify a specific and legitimate reason for rejecting these conclusions. Consequently, the ALJ erred in evaluating the record concerning Plaintiff's ability to stand and walk.

**B.      Additional Evidence before the Appeals Council**

In the Ninth Circuit, "when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is

part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999). Because the Appeals Council incorporated the treatment notes from Dr. WebbKummer and the medical questionnaire she completed, into the record, the Court must consider her opinion in determining whether the ALJ's decision is supported by substantial evidence. *Brewes,* 682 F.3d at 1160, 1163.

Defendant observes that "the questionnaire Plaintiff provided that postdates the ALJ's decision, as it is dated August 25, 2015 and the ALJ decision was on February 3, 2015." (Doc. 32 at 12) Defendant argues, "The Appeals Council acted according to regulation because the additional medical records did not pertain to the relevant time period." (*Id.*) According to Defendant, "though the Appeals Council considered the evidence, as instructed in *Brewes*, 682 F.3d at 1159-60, the evidence still did not provide a basis to change the ALJ decision." (*Id.*) In addition, Defendant asserts "the notion that Plaintiff was disabled since April 2010 is an issue for the Commissioner – not a treating physician" and as a result, the Appeals Council "correctly concluded that the information does not provide a basis for changing the ALJ decision." (*Id.*)

Importantly, "relevant evidence dated after the ALJ hearing decision can relate to the period on or before the date of the administrative law judge hearing decision." *Norris v. Colvin*, 142 F. Supp. 3d 419, 422 (D.S.C. 2015) (internal citations omitted); *see also Siegel v. Astrue*, 2009 WL 2365693 at *3 (E.D. Cal. July 31, 2009) (although the ALJ decision was issued in 2006, a 2007 study not before the ALJ "was considered by the Appeals Council and therefore is properly before" the district court ). Although the questionnaire from Dr. WebbKummer was dated August 25, 2015, she indicated that she believed Plaintiff had the limitations identified since April 2010. (*See* Doc. 12-25 at 55) Thus, the questionnaire addressed the period adjudicated by the ALJ, although it post-dated the decision. Indeed, the Appeals Council did not reject identify the questionnaire from Dr. WebbKummer among the evidence that was not relevant to the period adjudicated by the ALJ, and incorporated the opinion into the record. (*See* Doc. 12-3 at 3, 7)

Although Defendant contends the opinion bears on the ultimate issue and could properly be

11

disregarded, only the *conclusion* that Plaintiff is disabled may be rejected on these grounds. This is not a specific, legitimate reason for rejecting the limitations identified by Dr. WebbKummer. As this Court previously explained, "*To be very clear*, rejecting the ultimate conclusion concerning disability and rejecting findings concerning work-related limitations are two vastly different propositions that should not be conflated." *Neves v. Comm'r of Social Security*, 2017 WL 1079754 at *6 (E.D. Cal. Mar. 21, 2017) (emphasis in original)

Significantly, Dr. WebbKummer indicated Plaintiff walked with an "antalgic gait / unstable gait," and could stand and/or walk for only 5 minutes at one time and 30 minutes total in an eight-hour day. (Doc. 12-25 at 25) Thus, she believed that—contrary to the ALJ's findings—Plaintiff was not able to perform the exertional requirements of light work, which generally "requires a good deal of standing or walking." *See* SSR[2] 83-10, 1983 SSR LEXIS 30. In addition, standing and walking limitations identified of Dr. WebbKummer are consistent with the findings of Dr. Hernandez, who opined Plaintiff could walk for only 10-20 minutes at a time without a walker. Because, both physicians who treated and examined Plaintiff opined she had limitations with standing and walking, the Court is unable to find the ALJ's findings are supported by substantial evidence in the record.

## C.     Remand is Appropriate

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

---

[2] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ erred in evaluating the medical record, and a remand is necessary to consider the additional evidence submitted to the Appeals Council. Because the treatment notes and questionnaire completed by Dr. WebbKummer are properly part of the record, the ALJ must evaluate the additional evidence to determine its impact up Plaintiff's RFC, if any, and the ultimate question of her ability to perform work in the national economy. Accordingly, a remand for further proceedings is necessary.

## **CONCLUSION AND ORDER**

For the reasons set forth above, the administrative decision cannot be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Dorothy Whipple and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **March 28, 2018**     **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE